**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

      **-against-**                                            **96-CR-284**

**RICHARD VALLEE,**

                             **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

# DECISION & ORDER

## I. INTRODUCTION

Defendant Richard Vallee was charged in a two (2) count Superceding Indictment with violations of 18 U.S.C. §§ 844(i), 1512(a)(1)(c), 1512(a)(3)(A), and 2.[1] Following a

---

[1] Count 1 of the Superseding Indictment charged:

On or about the 28th day of July, 1993, at or near Rouses Point in the State and Northern District of New York, RICHARD VALLEE a/k/a Rick, the defendant herein, and others, maliciously damaged and destroyed, by means of explosive materials, a vehicle, to wit, a 1977 Porsche, New York registration G4A-542, used in interstate and foreign commerce and in any activity affecting interstate and foreign commerce. As a direct and proximate result of the use of said explosive materials, an individual, Lee Carter, died.

In violation of Title 18, United States Code, Sections 844(i) and 2.

Count Count 2 of the Superseding Indictment charged:

On or about the 28th day of July, 1993, at or near Rouses Point in the State and Northern District of New York, RICHARD VALLEE a/k/a Rick, the defendant herein, and others, did, with malice aforethought, unlawfully kill Lee Carter by means of a car bomb with the intent to

(continued...)

jury trial, Vallee was convicted of each of the two counts. Vallee now moves to vacate his convictions pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The Government has opposed the motions.

## II.    STANDARD OF REVIEW

### a.  Rule 29

Defendant moves for a judgment of acquittal pursuant to Fed. R. Crim. P. 29. See Notice of Motion, dkt. # 79; Memo. L. In Support of Rule 29 Motion, dkt. # 98. On such a motion, the Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004)(quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Fed. R. Crim. P. 29(c).

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003). In this regard, the Court must avoid substituting its own determination of the weight of the evidence presented and the reasonable inferences that may be drawn from that evidence. Id. "Indeed, it is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." Id. The Court must "credit[] every inference that the

---

[1](...continued)
prevent the communication by Lee Carter to a law enforcement officer of the United States of information relating to a conspiracy to export cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 963 and relating to a conspiracy to possess cocaine, a Schedule II controlled substance, with the intent to distribute it in violation of Title 21, United States Code, Section 846.

In violation of Title 18, United States Code, Sections 1512(a)(1)(c), 1512(a)(3)(A), and 2.

jury might have drawn in favor of the government," United States v. Temple, 447 F.3d 130, 136-37 (2d Cir. 2006), and resolve "all issues of credibility in favor of the jury's verdict." United States v. Desena, 260 F.3d 150, 154 (2d Cir. 2001); see also United States v. Florez, 447 F.3d 145, 154-155 (2d Cir. 2006)("In assessing sufficiency, we are obliged to view the evidence in its totality and in the light most favorable to the prosecution, mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court."). Further, the Court must "bear in mind that the jury's verdict may rest entirely on circumstantial evidence." United States v. Jackson, 335 F.3d at 180.

Although a defendant's burden on such a motion is not insurmountable, a judgment of acquittal will only be granted if "no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Cassese, 428 F.3d 92, 98 (2d Cir. 2005). Put another way, a Rule 29 motion must be denied if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Temple, 447 F.3d at 136 (emphasis in original).

### b. Rule 33

Defendant also moves for a new trial pursuant to Fed. R. Crim. P. 33. See Notice of Motion, dkt. # 79; Memo. L. In Support of Rule 33 Motion, dkt. # 91. Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33

> by its terms gives the trial court broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice. The district court must strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury. Because the courts

generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment. An example of exceptional circumstances is where testimony is patently incredible or defies physical realities, although the district court's rejection of trial testimony by itself does not automatically permit Rule 33 relief.

The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted. Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances.

United States v. Ferguson, 246 F.3d 129, 133-34 (2d Cir. 2001)(internal quotation marks and citations omitted).

### III.    BACKGROUND

The two (2) counts of conviction in this case arose out of the July 28, 1993 death of Lee Carter, who was killed when his car exploded as a result of a bomb planted below the driver's seat. See fn 1, *supra*. At the time of his death, Carter was scheduled to testify against Vallee in a criminal case in which Vallee and several other members of the Hells Angels Motorcycle Club were charged with conspiracy to smuggle 54 kilograms of cocaine into Canada. At the time, all co-defendants except Vallee had pled guilty and all refused to cooperate against Vallee. Carter's testimony was the only evidence linking Vallee to the cocaine smuggling conspiracy. Vallee was not in custody on July 28, 1993, but all other co-defendants were in custody. The cocaine charges against Vallee were dismissed following Carter's death.

4

In the present matter, the Government's case against Vallee rested upon circumstantial evidence linking Vallee to the bombing, and admissions by Vallee, including one to Surete du Quebec investigators, that he had blown up Carter. With regard to the circumstantial evidence linking Vallee to the bombing, the Government found at the scene of Carter's murder pieces of an explosive device including wires originating from a CXA Constadet detonator. On February 16, 1994, while the Montreal police were watching Vallee's apartment on an unrelated matter, a individual named Carlo Farruggia approached the apartment as if to knock, but fled upon seeing the constables. Farruggia was apprehended and found to be in possession of brief case containing $122,000 in cash. In Vallee's apartment was a money counting machine and $128,090 in cash. Farruggia also had a key that belonged to a vehicle in the parking garage below. A key issued to a tenant in the apartment building was needed for entry into the garage. A search of the vehicle led to the discovery of a cylinder which held a CXA detonator with the same wires as found at the scene of Carter's bombing, and a gun. After the money was seized, Vallee and Farruggia retained the same accountant so that each could obtain the return of a portion of the money seized from them.

In another investigation, Canadian police were monitoring a wiretap in which conversations of Vallee, Martin Ross, and others were intercepted. A search of an apartment leased to Ross led to the discovery of a bag with Valle's fingerprint on it. The bag contained items useful in making bombs such as a delay switch, batteries and battery packs, various tools, and pagers. Vallee's fingerprints were also found on a battery pack. A second bag in Ross's apartment, on which Farrugia's fingerprints were found, contained the explosive Superfrac. Superfrac is a water based explosive which, the government

contended, was consistent with the explosive used in the Carter bombing. Also found in the apartment were CXA detonators, although with different color wires than used in the Carter bombing.

Evidence of Vallee's admissions came in two forms. The first was the testimony of Eric Archambault, an individual who testified that he was a member of a Hell Angels' "puppet club" and worked for Vallee in the distribution of narcotics. Archambault testified that at the end of the summer of 1993, he and Vallee attended a party to celebrate a woman who was going to jail and who had refused to cooperate against the Hells Angels. Archambault testified that, at the party, Vallee told Archambault that he (Vallee) actually was celebrating that he had blown up a guy "on the other side." Archambault understood the reference to the "other side" to mean the United States. The Government argued that since Carter was murdered on July 28, 1993 in the United States, Vallee was bragging about Carter's murder. The second admission came from testimony of Surete du Quebec agents. The agents testified that, on April 3, 1995 in Three Rivers, Quebec, while the agents were questioning Vallee on a charge of attempted murder, Vallee bragged that he had blown up Carter preventing Carter from testifying against him in the cocaine case. Vallee boasted that the two purported witnesses in the attempted murder charge would not testify either.

## IV.   DISCUSSION

### a.   Rule 29 Motion

Defendant argues that he is entitled to a judgment of acquittal on both counts because, looking at the evidence in the light most favorable to the prosecution, there was

6

"equal or nearly equal support for a theory of guilt and a theory of innocence" and, therefore, "the jury must have engaged in impermissible speculation in order to improperly arrive at a verdict of guilt." Def. Rule 29 Mem. L. p. 2. The Court disagrees.

Viewing the evidence in the light most favorable to the prosecution, support for Defendant's guilt on both counts was overwhelming. The prosecution presented evidence from which a rational jury could have concluded that Defendant had the motive and opportunity to murder Carter in order to prevent him from testifying in the criminal cocaine conspiracy case, and had access to the skills and materials to do so by blowing him up. Although largely circumstantial, the evidence was sufficient to show Defendant's involvement in Carter's murder. United States v. Glenn, 312 F.3d 58, 64 (2d Cir. 2002) ("Moreover, the absence of any direct evidence that Parker killed Lewis is not dispositive; the prosecution may prove its case entirely by circumstantial evidence so long as guilt is established beyond a reasonable doubt.").

Further, crediting the testimony of the two Surete du Quebec agents and Eric Archambault, a rational juror could have easily concluded that Defendant bragged of committing the murder underlying the crimes alleged in the Superceding Indictment. Thus, viewing the evidence in the light most favorable to the prosecution, there was not "equal or nearly equal support for a theory of guilt and a theory of innocence" as Defendant argues. See Zappulla v. New York, 391 F.3d 462, 473 (2d Cir. 2004) (noting importance of confession in murder trial).

Even assuming, *arguendo*, that some evidence was improperly admitted, see Discussion (b), *infra*, the totality of evidence overwhelmingly supported conviction on both counts. See United States v. Cruz, 363 F.3d 187, 197 (2d Cir. 2004)("In situations where

some Government evidence was erroneously admitted, we must make our [Rule 29] determination concerning sufficiency taking into consideration even the improperly admitted evidence.")(citations omitted).  Accordingly, Defendant's motion for a judgment of acquittal pursuant to Rule 29 is denied.

> **b.    Rule 33**

Under Rule 33, Defendant argues that he is entitled to a new trial because

> the government improperly introduced a great deal of very prejudicial evidence pursuant to Rule 404(b). This included evidence that a detonator alleged to be similar to the one in the car bombing was found in a car belonging to Carlo Farruggia when he was outside Defendant's apartment; evidence of bomb making material found in the Ross apartment; and a great deal of "guilt by association" evidence regarding alleged associates of Mr. Vallee.

Def. Rule 33 Mem. L. pp. 1-3.

The Government argues that the evidence objected to by Defendant was admissible to show motive, opportunity, access to skills and materials used in Carter's murder, and to show the context in which Defendant's admissions were made.

As to a motive for killing Carter, the evidence showed that Carter was the only eye witness to Defendant's purported participation in a conspiracy with other members of the Hells Angles Motorcycle Club to import cocaine into Canada. Evidence of the cocaine conspiracy, the nature of the proof against Defendant in that case, and of the co-defendants' guilty pleas was probative of Defendant's motive to silence Carter.  Evidence that Defendant was not in custody at the time of Carter's murder whereas his co-defendants were was probative of Defendant's opportunity to commit the crimes.

Evidence of Defendant's membership in the Hells Angles Motorcycle Club was probative of, *inter alia*, his relationship with Eric Archambault and explained why

8

Defendant would purportedly brag to Archambault about blowing up a guy "on the other side."  See United States v. Reifler, 446 F.3d 65, 93 (2d Cir. 2006)("evidence that key individuals were members or associates of organized crime families was relevant in a number of ways" including to explain why a defendant could comfortably approach others with proposal for fraudulent scheme); see also  United States v. LaFlam, 369 F.3d 153, 156 (2 Cir. 2004)("McCullough's testimony about using drugs with Laflam is also probative of their relationship and will explain why Laflam was likely to confide in McCullough about his criminal plans."); United States v. Gray, 410 F.3d 338, 345 (7th Cir. 2005) (evidence that defendants were members of Diablos Motorcycle Club properly admitted to show, *inter alia*, how defendants knew each other).

  Evidence of Defendant's association with Martin Ross and Carlo Farruggia was probative of Defendant's access to bomb making materials and expertise, including his access to the same detonator that was used in the Carter bombing.  While the links between Vallee, Ross, Farruggia, and the bomb making materials were, in many respects, circumstantial, the links were such that a reasonable juror could logically infer a connection between Vallee and bomb making materials and bomb makers.  As stated above, Vallee's fingerprints were found on a bag containing bomb making material and a battery pack in Ross's apartment, and the same detonator as used in Carter's murder was found in Farruggia's car parked in a private lot of Vallee's apartment building moments after Farruggia attempted to enter Vallee's apartment.  A jury could have reasonably concluded that Vallee was associated with both Ross and Farruggia and, therefore, had access to the skills and materials necessary to construct a bomb similar to that used to kill Carter.

Evidence of Defendant's 1995 attempted murder charge was probative of the context in which he made the statement to the two Surete du Quebec investigators that he had blown up Carter.

Moreover, when the Court admitted evidence for a limited purpose, it gave the jury a limiting instruction and gave an additional limiting instruction immediately before charging the jury on the law. See Trial Trans. pp. 921-923.[2] It is presumed that the jury followed these limiting instructions, see, e.g., United States v. Downing, 297 F.3d 52, 59 (2d Cir. 2002); United States v. Salameh, 152 F.3d 88, 116 (2d Cir.1998), and Defendant has not established that the prejudicial spillover was so overwhelming as to conclude that the jury was unable to follow the instructions. United States v. McDermott, 245 F.3d 133,

---

[2] In this regard, the Court instructed:

> All right. Ladies and gentlemen, in a moment I'm going to give you my formal final instructions on the law, but before I do that, I just want to discuss a couple of matters.
>
> There was some evidence that you heard during the course of the trial that was received by the Court to be used by you for a limited purpose. And you'll remember way back on day one I told you that some evidence would come in for a limited purpose and that's the only way you could consider it. So I just want to mention a couple of those instances.
>
> You've seen and heard evidence, including photographs of certain detonators, certain tools and explosives was offered by the Government for the limited purpose of tending to show the defendant had the opportunity to commit the crime due to access to items similar to those used in the crime charged in the Indictment. You've also seen and heard evidence that a particular group had been involved in bombings and that the defendant was a member of that group offered by the Government for the limited purpose of tending to show access to distinctive or unusual skills or abilities employed in the commission of the crime charged in the Indictment. In that connection, let me remind you that the defendant is not on trial for committing these acts or those acts not alleged in the indictment. Accordingly, you may not consider these -- evidence of these other similar acts as a substitute for proof that the defendant committed the crime charged, nor may you consider this evidence as proof that the defendant has a criminal personality or bad character. The evidence of other similar acts was admitted for a much more limited purpose and you may consider it only for that limited purpose.

Trial Trans. pp. 921-922. The Court continued with a limiting instruction relative to consciousness of guilt evidence derived from Defendant's flight, an issue which has not been brought up by Defendant in his post trial motions.

10

140 (2d Cir. 2001).

The Court is satisfied that competent, satisfactory and sufficient evidence in the record supports the jury's verdict, and that an innocent man has not been convicted. Letting the guilty verdicts stand would not be a manifest injustice. Accordingly, Defendant's motion for a new trial pursuant to Rule 33 is denied.

## V.	CONCLUSION

For the reasons stated above, Defendant's motion to vacate his convictions pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, dkt. # 79, is **DENIED**.

**IT IS SO ORDERED**

DATED: April 10, 2008

*[signature]*
Thomas J. McAvoy
Senior, U.S. District Judge